UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SENTRY POOL, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 07-4082 |
| v. ) | |
| ) | |
| WAVE TEC POOLS, INC. ) | |
| ) | |
|     Defendant. ) | |

**O R D E R**

Before the Court is Defendants' Motion to Dismiss, filed on March 7, 2008. [Doc. 11.] Plaintiff filed a Response on March 24, 2008. [Doc. 15.] For the following reasons Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**I.
BACKGROUND**

On December 29, 2003 Sentry Pool, Inc. ("Plaintiff") contracted to buy Riverpool units[2] from Wave Tec Pools, Inc..[3] (Doc. 1.) The contract was to last for

---

[2] A Riverpool unit is a package that includes parts for a pool, such as galvanized panels, decking and supports, a powder coat of steal, hydraulic pump and motor, stainless steel return benches, coping, hardware to assemble, and support straps for walls. (Doc. 1, Exh. B.)

[3] The individual defendant Jason Herring is the President and CEO of Wave Tech Pools; and Richard Leaf is the COO of Wave Tech Pools. (Wave Tech and these individual defendants are hereinafter collectively referred to as "Defendants.")

one year or until a minimum of 100 Riverpool units were purchased, whichever occurred first. (Doc. 1.) The contract states in part:

> Buyer hereby agrees that for the term of this contract, Buyer will not purchase pools substantially the same as the "Riverpool" unit or not duplicate or manufacture or outsource the manufacture of units similar to the "Riverpool" unit under terms of this agreement.

(Doc.1-3, ¶ 1.)

The contract further discussed issues of intellectual property by including the following section:

> Any and all trademarks which each of the Parties uses in connection with the "Riverpool" unit are and shall remain in exclusive property of Seller.

(Doc. 1-3, ¶ 10.)

In 2007, nearly four years following the initial contract date, Plaintiff claims Defendants violated Plaintiff's intellectual property rights associated with the Riverpool unit. Specifically, Defendants allegedly violated Plaintiff's rights when they sent Plaintiff's print books and manufacturer cut sheets to one of Plaintiff's competitors. (Doc. 1.)

Plaintiff has now filed suit alleging breach of contract (Count I), violation of trade secrets (Count II), copyright infringement (Count III), interference with business relations (Count IV), interference with a prospective economic advantage (Count V), and patent infringement (Count VI and VII).

## II.
## LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff and the complaint's well-pleaded factual allegations must be accepted

as true. Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995). Therefore, a complaint can only be dismissed if a plaintiff cannot prove any set of facts upon which relief can be granted. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429-30 (7th Cir. 1996). However, the Court is not bound by a plaintiff's legal conclusions. Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir. 1996). The province of Rule 12(b)(6) motions is to question the availability of a legal formula justifying relief on the alleged facts, not to test or determine the facts themselves. Maple Lanes, Inc. v. Messer, 196 F.3d 823, 824-25 (7th Cir. 1999).

### III.
### ANALYSIS

#### A. Breach of Contract

Defendants argue that the contract between Plaintiff and Defendant, Wave Tech Pools, Inc., began on December 29, 2003 and expired on December 29, 2004. Defendants further argue that despite the parties ability to agree to extend the contract, no terms indicating an agreement or extension of the contract are mentioned in the Complaint. Specifically, Defendants argue that this claim should be dismissed because the Complaint did not state enough details as to how or when the parties agreed to extend the contract.

Plaintiff states in his brief that the parties orally agreed to extend the contract. On the other hand the Complaint itself does not state how the contract is extended, but does allege that the contract was in force at the time of the alleged breach.

3

Nonetheless, the factual details regarding the oral extension of the contract are not necessary at this stage of litigation. Under Federal Rules of Civil Procedure 8(a) a plaintiff must set forth a "a short plain statement of the claim". Fed. R. Civ. P. 8(a). Recent rulings in the Seventh Circuit require the complaint to contain more than "sketchy" facts, as well as "enough facts to state a claim to relief that is plausible on its face". <u>Airborne Beepers & Video, Inc. v. AT&T, Mobility, LLC</u>, 499, F.3d 663 (7th Cir. 2007); <u>Killingsworth v. HSBC Bank Nevada, NA</u> 507 F.3d 614 (7th Cir. 2007).

This Court finds that even under the most restrictive analysis, the details within the Complaint are sufficient to state a plausible claim for relief. It is reasonable to imply that the contract was extended based on Plaintiff's allegation that the parties were still bound by the agreement on September 19, 2007, almost four years after its execution. Based on this allegation, Plaintiff has stated a sufficient amount of facts to state a plausible claim for relief.[4] The Court further assumes Plaintiff has made the allegations in good faith and will be expected to provide evidentiary support for such allegations when required in future proceedings. Therefore, Plaintiff stated a sufficient amount of facts at this stage. Based on this analysis, the Court denies Defendants' Motion to Dismiss Count I for breach of contract.

---

[4] The Court notes that under Section 8 of the Contract, the section concerning the "Duration of Agreement," where there is a dispute regarding extension of the Contract, it appears that the parties are bound to submit the issue to mandatory arbitration. No party has raised this provision before this Court and no party has argued that this matter should be stayed pending arbitration.

4

### B. Violation of Trade Secrets

Defendants next argue that Plaintiff's allegations did not state a viable claim for violation of a trade secret.[5] Defendants further argue that Plaintiff's Complaint did not describe the trade secret with the required specificity and particularity. The Court will address each argument in turn.

To allege a violation of a trade secret, the ITSA requires the complaint to allege (1) what the trade secret at issue is, (2) its misappropriation and (3) its use in defendants' business. 765 Ill. Comp. Stat. 1065/1 et seq. Further, no trade secret is protected if a product is available to the market. United States Gypsum Co. v. LaFarge N. America, Inc., 508 F. Supp. 2d 601, 624 (N.D. Ill. 2007). Misappropriation indicates that information was stolen and given to another source instead of independently developed. Rotec Indus. Inc. v. Mitsubishi Corp., 179 F. Supp. 2d 885, 893 (C.D. Ill 2002). To prove the trade secret was used in a defendants' business, one must prove more than a potential misuse of the secret. Teradyne, Inc. v. Clear Commc'n Corp., 707 F. Supp. 353, 357 (N.D. Ill. 1989). Moreover, it is not enough to allege conclusory statements claiming a defendant will use or disclose information in the future without any factual allegation of the

---

[5] Under the Illinois Trade Secret Act ("ITSA"), a "trade secret" is: "[i]nformation, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that: (1) sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 760 ILCS § 1065/2(d).

defendant's actual use.  Complete Bus. Solutions, Inc. v. Mauro, 2001 U.S. Dist. LEXIS 3132, * 3 (N.D. Ill. 2001).

Despite Defendants' argument, Plaintiff has in fact addressed the three elements throughout its Complaint.  First, though applying for a patent would make the products publicly available, the application has yet to be accepted.  Therefore, the information has not been disclosed to the public and is still kept within the business.  Further, the contract itself shows the intent of Plaintiff to retain secrecy of its products as evidenced by section 10, paragraph B which states:

> "Buyer agrees that Buyer is solely responsible for any infringement lawsuit concerning the infringement of patents or trademarks *or the like* created by the sale, promotion for sale or distribution created by the sale of the Riverpool unit thru any part of Buyers organization."

(Doc. 1-3, 4.) (emphasis added).

The inclusion of this paragraph in the contract signifies Plaintiff's intent to establish their rights and ownership over their products regardless of the products status as a patent or trademark.  Though it is not mentioned in the contract, it is clear that the qualifying phrase "or the like" can reasonably be inferred at this stage to include a trade secret.  This paragraph indicates Plaintiff's objective to keep the products a secret as well as indicate the responsibility of such secrecy to Defendants.

The second element, misappropriation, is addressed in paragraph 21 of the Complaint which states that Defendants sent print books and manufacturer cut sheets to Plaintiff's competitors "without the authority and express permission of Plaintiff."  (Doc. 1.)  This statement gives Defendants "fair notice" of Plaintiff's

6

claim and adequately fulfills the second element of the ITSA. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007). Further, though Defendants include each element required for misappropriation in their Response, Plaintiff need not include details of the elements to be argued at trial. See, e.g., AutoMed Techs., Inc. v. Eller, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001) (stating "trade secrets need not be disclosed in detail in a complaint").

The final element of a violation of a trade secret claim is using the product or information in business. Plaintiff alleges that in the course of Defendants' business Defendants sent print books and cut sheets to Plaintiff's competitors. Discovery could reveal that Defendants provided this intellectual property in an effort to develop a business relationship with Plaintiff's competitor in exchange for a monetary reward. However, Plaintiff need not provide the factual details of such allegations at this time. All that matters is that Plaintiff has adequately claimed that Defendants sent this intellectual property to a competitor in the course of their business. Accordingly, the Court finds Plaintiff's Complaint sufficiently pled the final element required by the ITSA.

Defendants next argue that this Count does not meet the required level of specificity. "It is not enough to point to broad areas of technology. . . [t]he plaintiff must show concrete secrets." Composite Marine Propellers , Inc. v. Van Der Woude, 962 F.2d 1263, 1266 (7th Cir. 1992). This rule is in place to prevent a Plaintiff from going on a "fishing expedition" through discovery to determine what, if any, trade secrets have been misappropriated. See, e.g., AutoMed Tech., Inc., 160 F.Supp. 2d

7

at 925-26.  Though the Court agrees that a complaint must be specific when addressing trade secrets, Plaintiff's Complaint is sufficient and there does not appear to be any risk of a "fishing expedition".  The Complaint states Plaintiff's print books and cut sheets are trade secrets.  Plaintiff named two specific products instead of broadly generalizing numerous products, and does not appear to require discovery to discern which trade secrets were misappropriated.  Based on this analysis, the Court finds Plaintiff pled their trade secret with adequate particularity.  Therefore Defendants' Motion to Dismiss Count III is Denied.

**C. Copyright Infringement**

Defendants argue for dismissal of the copyright infringement claim because the Complaint did not include a copyright registration number.  Defendants emphasize that copyright registration is a condition precedent to filing suit.  Burns v. Rockwood Distrib., 481 F. Supp 841, 845 (N.D. Ill. 1979).  Plaintiff provides the registration numbers in their brief and requests leave to amend their complaint to include these numbers.  (Doc. 15.)

Federal Rule of Civil Procedure 15(a) allows courts to grant a leave to amend when "justice so requires."  Fed. R. Civ. P. 15(a).  This rule allows parties to amend their complaint when matters have been overlooked or unknown at the time of the initial statement.  Id.  The court has discretion in this determination, but if the district court lacks a "substantial reason" to deny leave, the discretion is not broad enough to permit denial.  Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981).

This Court grants Plaintiff's request for leave to amend the Complaint based on the fact that the copyright registration numbers are in Plaintiff's possession and are also found in Exhibit A. Additionally, the Court has no "substantial reason" to deny leave to amend. Therefore, this Court will allow Plaintiff leave to amend his Complaint within seven (7) days of this Order.

### D.  Interference with Business Relations and Prospective Economic Advantage

Defendants argue Plaintiff's claims for interference with business relations and prospective economic advantage are preempted by the ITSA. Federal courts consistently apply Section 8 of the ITSA to pre-empt non-contract claims to the extent that they are based on a misappropriation of trade secrets. Composite, 962 F.2d at 1265. Additionally, if an interference claim is simply a restatement of a plaintiff's claim for misappropriation, the claim is preempted by the ITSA. See, eg., Fox Controls, Inc. v. Honeywell Inc., 2002 U.S. Dist. LEXIS 15663, *5 (N.D. Ill 2002).

Upon review of Counts IV and V of Plaintiff's Complaint, this Court finds no factual difference from the trade secret claim. The Complaint once again cites to the allegation that Defendants sent print books and cut sheets to Plaintiff's competitor. This is the same factual premise made *supra* for the misappropriation of a trade secret claim. As such, the allegations are simply restatements of the

trade secret claim and are expressly preempted by 765 ILC 1065/8[6]. Therefore, because Plaintiff presents no new factual allegations differing from the trade secret violation claim, both claims are thus preempted by the ITSA, and as such, Counts IV and V are dismissed.

### E. Patent Infringement

Finally, Plaintiff seeks relief for patent infringement. However, "a suit cannot be brought for infringement of a patent that has not issued." Amgen, Inc. v. Genetics Inst., Inc., 98 F.3d 1328, 1332 (Fed. Cir. 1999). Because Plaintiff has merely applied for a patent and has not yet been issued a patent, he is not able to seek relief for patent infringement at this time. Therefore, Defendants' Motion to Dismiss Counts VI and VII is granted.

## IV.
## CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss [Doc. 11] is DENIED as to Counts I, II, and III and GRANTED as to Counts IV, V, VI, and VII. Plaintiff is GRANTED seven (7) days to file an Amended Complaint which incorporates the copyright registration numbers in Count III. This matter is referred to the Magistrate Judge for pretrial proceedings.

ENTERED this 6th day of August, 2008.

s/ Joe Billy McDade<br>
Joe Billy McDade<br>
United States District Judge

---

[6] Sec. 8 (a) states: " (a) Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.